In the Interest of S.J.K., a Child,

D.D., Maternal Grandmother, Appellant,

G.K., Father, Appellant.

No. 96–0989.

Court of Appeals of Iowa.

Dec. 20, 1996.

Kolleen K. Samek, Des Moines, for appellant-maternal grandmother.

Martha M. McMinn, Sioux City, for appellant-father.

Thomas J. Miller, Attorney General, Barbara E.B. Galloway, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Dewey P. Sloan, Assistant County Attorney, for appellee-State.

Teresa O'Brien of Forker & Kanter, Sioux City, guardian ad litem for minor child.

Considered by CADY, P.J., and HUITINK, J., and SCHLEGEL, Senior Judge.*

SCHLEGEL, Senior Judge.

This is an appeal of a termination of the parental rights of Greg and Rachel, and an appeal by the maternal grandmother, Deborah, concerning custody of the minor child, Samantha K. The natural mother of Samantha does not appeal the termination of her parental rights.

Greg admits to being the father of Samantha, although he is not listed on the birth certificate and has not signed an affidavit of paternity. No parental (blood or genetic) testing was carried out to prove or disprove the paternity of Greg. None of the parties contested his claim of paternity. Rachel agreed that Greg was the father and the court so found.

Rachel was fifteen years of age when Samantha was born on April 10, 1993. Greg was eighteen years of age.

Rachel did not appear at the hearing on the petition to terminate the parental relationship between herself and Greg and Samantha. Since she has not appealed the termination, this opinion will not be extended

---

* Senior judge from the Iowa Court of Appeals serving on this court by order of the Iowa Supreme Court.

to detail the factors leading to the termination of her parental rights. The last communication of Rachel that was made known to the court was a letter in which she expressed no desire to have any further relationship with Samantha. From that statement and from the inappropriate relationship with Samantha during the prior three and one-half years, it is clear the best interests of Samantha require that Rachel's parental relationship with Samantha be terminated.

In his appeal, Greg contends the juvenile court erred in terminating his parental rights because the record does not prove by clear and convincing evidence that he received services to correct the circumstances that led to the adjudication or that these circumstances continue to exist despite the offer or receipt of services. He also claims there was not clear and convincing evidence that he failed to maintain significant and meaningful contact with the child during the previous six months, and that there is not clear and convincing evidence that the child cannot be returned to his custody. The court found that his history and relationship with Samantha "has, if anything, been less impressive than that of Rachel's." The court pointed out Greg's sporadic employment record, having had twenty jobs and an undetermined number of residences in the past two years. Greg admitted to having had about forty girlfriends since age sixteen. He also has a criminal history of domestic abuse, including convictions for abuse of Rachel in that offense. He testified he had completed a remedial course concerning domestic abuse. The court found that such a course had been repeatedly recommended by the juvenile court system and he had refused to be involved in it until it became a condition of his probation on a conviction of domestic abuse. His driving privileges have been revoked because of driving violations.

At the time of trial, Greg lived with a woman who had two children and with whom, he testified, he had a platonic relationship, although they share a one-bedroom apartment. He has no home in which to care for Samantha, were he to be given custody of her, and he has no experience with Samantha, excepting for short and somewhat sporadic visits with her. The juvenile court has never allowed him overnight visits with Samantha.

Deborah, the maternal grandmother of Samantha, was permitted to intervene in this case, and she has appealed the trial court's decision insofar as it involves a denial of consideration of her as an adoptive parent or for pre-adoptive placement with her. She contends the trial court erred in not considering the best interests of the child, Samantha, regarding her placement for adoption. She complains of the court's finding that Deborah's intent to allow Samantha to continue knowing her biological parents constituted disobedience to a court order, or that it would cause harm to Samantha. She claims the court erred in directing the DHS to place Samantha for adoption in a home other than her home.

*I.* With respect to the appeal of the father, Greg, his first contention is that he did not receive services to correct the circumstances which led to the adjudication (of CINA) or that these circumstances continue to exist despite the offer or receipt of services.

The juvenile court terminated Greg's parental rights pursuant to Iowa Code sections 232.116(1)(c) and (h) (1995). Sections 232.116(1)(c) and (h) provide:

1. [T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child [when]:

. . . .

c. The court finds that both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents....

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

. . . .

h. The court finds that both of the following have occurred:

(1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.

(2) There is clear and convincing evidence that the circumstances surrounding the abuse or neglect of the child, despite the receipt of services, constitutes imminent danger to the child.

The juvenile court also found:

[T]he court specifically finds that neither Greg [ ] nor Rachel [ ] have maintained significant and meaningful contact with Samantha as defined in the Iowa Code and that a satisfactory showing for termination of their parental rights has been shown under Section 232.116(1)(d) thereof.

That section provides, in part:

d. The court finds that all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "*significant and meaningful contact*" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

■ Greg has failed to establish any kind of home that would be appropriate for the custody of Samantha. His employment history is very unstable. He has been convicted of domestic abuse upon at least one occasion. His driving privileges have been revoked for reasons connected with violations and convictions. His female relationships have been numerous and noncommittal. His living conditions at the time of the trial were not conducive to a family situation with Samantha as a part of the family. His only suggestion for housing himself and Samantha, should he be given custody of her, was to rely upon his parents' house as a home for them. This was not established as a proper alternative. It cannot be said that Greg had any reasonable plans on how to make a home for Samantha.

It is clear there were some difficulties in visitation schedules for Greg's visits with his daughter. However, his visitation was sporadic, at best, and did not evidence a parent-child relationship. It is significant that the juvenile court did not allow overnight visitation. Greg simply did not have any place appropriate to exercise such visitation.

We agree with the juvenile court that the best interests of Samantha require that the parental rights of Greg be terminated. Samantha should not be required to await the possible maturity of Greg. A child need not endlessly await the maturity of his or her natural parent. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). The turbulent lifestyle that Greg has carried out, together with his unstable work history and relationships with women, evidence that the conditions that precipitated the CINA adjudication still remained after the receipt of services. We find that numerous services were provided Greg without the necessary results to enable him to become a fit custodian or parent of Samantha. We affirm the termination of the parental relationship of Greg with Samantha.

■ *II.* Deborah, the grandmother of Samantha, raises two issues in her appeal. Her principal contention is that the juvenile court erred in not considering the best interests of the child, Samantha, regarding her placement for adoption. This issue caused the trial court concern, since Deborah has been the custodian of Samantha during all but approximately six months of her life, up to the time of trial. The evidence showed that Samantha seemed to be content with her life with Deborah and it would be traumatic to take her away from that environment. Deborah has appealed the court's ruling on the basis it would not be in the best interests of the child to remove her from Deborah's home and to require that Deborah would not be a candidate for adoption of Samantha.

The juvenile court pointed out that Deborah:

> candidly and repeatedly testified that it was her intention to adopt Samantha along with her husband if that possibility arose but that "regardless of the (termination) proceedings" would continue to raise Samantha as her grandchild and to allow the continuation of a quasi-parental relationship between Samantha and both Greg [ ] and Rachel [ ]. The evidence also shows that some sort of relationship between Rachel [ ] and Greg [ ] continues to exist.

The court found Samantha's immediate and long-range interests mandate placement totally away from the chaotic environment into which she was born and has intermittently endured since.

We agree with the juvenile court. The termination of parental rights was brought about in order to make a stable home and life for Samantha. Leaving custody with Deborah would, it seems, have the effect of perpetuating the situation that led to the termination proceedings in the first place. As the court has pointed out, the life of Deborah has also been quite unstable, since she is now married to her fourth husband and has carried on an affair that has caused a considerable rift in that relationship. Her present husband has also been married four times. Rachel grew up in the home of Deborah with results that may be considered by the juvenile court in assessing the future well-being of Samantha. The court was correct in directing an end to the relationship that might well have led to further chaos and disruption in this little girl's life, and we affirm the court on this issue.

■ Deborah raises another issue in her appeal. She notes that in establishing paternity of Greg, no chemical testing of his blood or that of the baby was carried out or placed in evidence. Deborah raises the specter of a case similar to *In re B.G.C.*, 496 N.W.2d 239 (Iowa 1992). In that case, the natural mother of the child named a putative father, who by blood tests was later proved not to be the father. *Id.* at 241. The real father was named and he petitioned the court to reclaim his child. *Id.* Ultimately, the child was returned to the natural father. *Id.* at 246.

While it may have been wiser to require blood testing to give credence to the paternity of Greg, there was never any suggestion by any party that he was not the father of the child. The court took the precaution of giving published notice, in compliance with Iowa Code section 232.112 (1995), on "John Doe, unknown biological father." Return of service was filed and no contest of that notice or of the procedure used was made by Deborah at the termination hearing. Deborah made no objection at trial based upon this issue. The issue was not preserved for appeal by Deborah or any other party. Greg readily admitted paternity and Rachel, throughout the juvenile court proceedings over a period of two years, consistently named Greg as the father. Greg's paternity has been uncontested for all of the period of these proceedings. His paternity is established beyond any doubt. Deborah's complaint on this issue is without merit.

We affirm the termination of the parental relationship of Rachel and Greg as to the child, Samantha. We affirm the juvenile court's ruling in all respects.

**AFFIRMED.**